**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| TIMOTHY LONDREGAN, NIANTIC | ) | 3:22-CV-415 (SVN) |
| BAY SHELLFISH FARM, LLC, and | ) | |
| MARKER SEVEN MARINA, LLC, | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | |
| | ) | March 31, 2023 |
| TOWN OF EAST LYME, MARK | ) | |
| NICKERSON, and WILLIAM | ) | |
| MULHOLLAND, | ) | |
| *Defendants*. | ) | |

## RULING AND ORDER ON DEFENDANTS' MOTION TO DISMISS

Sarala V. Nagala, United States District Judge.

This action arises from the operation of a shellfish farm in the waters of the Niantic region of East Lyme, Connecticut by Plaintiffs, Timothy Londregan and two companies formed by him, Niantic Bay Shellfish Farm, LLC ("NBSF") and Marker Seven Marina, LLC ("MSM"). Plaintiffs allege that Defendants—the Town of East Lyme (the "Town"); Mark Nickerson, the Town's First Selectman; and William Mulholland, the Town's Zoning Enforcement Officer ("ZEO")— interfered with Plaintiffs' shellfish farming operation by, among other things, issuing a cease-and-desist order requiring Plaintiffs to cease operation. They claim that Defendants treated them differently than other similarly situated residents and businesses in violation of the Equal Protection Clause.

Defendants have filed the present motion to dismiss the complaint, contending that Plaintiffs' claims are not ripe for judicial review and that the allegations of the complaint fail to state equal protection claims. For the following reasons, the Court agrees with Defendants that Plaintiffs' claims are not ripe for judicial review, but will allow Plaintiffs to file an amended

complaint to cure the defects identified herein.  Accordingly, the Court GRANTS Defendants' motion to dismiss, ECF No. 17.

## I.  FACTUAL BACKGROUND

### A.  Niantic and Plaintiffs' Earliest Operations

The complaint contains the following allegations, which are accepted as true for the purpose of this motion to dismiss.  *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008).  Niantic is a village located in the southeastern corner of the Town, bordered to the south by Niantic Bay, which opens into Long Island Sound.  Compl., ECF No. 1, ¶¶ 5, 11.  The Niantic River runs along the eastern side of the Town and empties into Niantic Bay.  *Id.* ¶ 11.  Niantic has a reputation for producing "some of the best shellfish for consumption," and it has a "long history of both recreational and commercial shellfishery."  *Id.* ¶ 12.

In 2013, Londregan created NBSF, an aquaculture operation to farm and harvest shellfish using oysterbeds in Niantic Bay.  *Id.* ¶ 13.  NBSF uses a Shell-Plex vessel, which is a platform boat containing equipment that lifts shellfish cages from the floor of the river and tumbles the shellfish, allegedly promoting shellfish growth.  *Id.* ¶ 16.  Plaintiffs allege that, at all relevant times, NBSF had all required permits from the Connecticut Department of Energy and Environmental Protection ("DEEP").  *Id.* ¶ 30.  Nevertheless, the Niantic River Advocacy Coalition ("NRAC"), composed of various unidentified private parties such as local landowners, have opposed NBSF's operation.[1]  *Id.* ¶¶ 18–19.

---

[1] In 2016, NBSF entered into a lease to berth its Shell-Plex vessel in the Niantic River and harvest shellfish there. Compl. ¶ 15.  When NBSF applied for a new lease in the Niantic River with the Town and the neighboring town of Waterford, NRAC formed and began opposing NBSF's operation.  *Id.* ¶¶ 18–19.  The Town and the town of Waterford ultimately denied NBSF's application for the new lease.  *Id.* ¶ 21.

B.  The Cease-and-Desist Order

In March of 2018, the piles in the Niantic River where NBSF operated its shellfish farming operation broke, and the Waterford Harbor Management Commission removed the piles.[2]  *Id.* ¶ 22.  Consequently, NBSF entered into a sublease with Marker Seven Marina & Tackle Shop, LLC and berthed its Shell-Plex vessel at the marina located at 109–11 Main Street in Niantic.  *Id.* ¶¶ 23–24.  Londregan subsequently formed Plaintiff MSM, which took over Marker Seven Marina & Tackle Shop, LLC's lease.  *Id.* ¶ 29.

The marina, which is the subject property of this action, was located on the southwestern corner of the Niantic River and the Niantic Bay.  *Id.* ¶ 23.  A company named Boats, Inc., serving seasonal recreational boaters, occupied the neighboring marina to the north.  *Id.* ¶ 26.  The subject marina and the Boats, Inc. marina contained docks that extended parallel into the Niantic River; the closest points between the docks were approximately 167 feet apart.  *Id.* ¶ 27.

In May of 2019, Nickerson, the Town's First Selectman, emailed Plaintiffs reporting that there had been a "noise complaint" arising from the sound of the Shell-Plex tumbling oysters at the subject marina, despite that that the sound of the Shell-Plex tumbling operation is "minimal," and would have been equivalent to the sound of "someone washing their boat" to a neighboring marina.  *Id.* ¶¶ 32–33.  Plaintiffs believe the noise complaint came from Boats, Inc. and stemmed from its "desire to fashion its marina and neighboring marinas for its luxury boating customers." *Id.* ¶ 35.  Nickerson's email "claimed that there were zoning violations" at the subject marina related to the Shell-Plex tumbling operation and "threatened a cease-and-desist order."  *Id.* ¶ 32.

---

[2] Plaintiffs allege that the Waterford Harbor Management Commission *illegally* removed the piles, Compl. ¶ 22, but it is unclear how this allegation bears on the allegedly unconstitutional conduct of Defendants in this action, the Town of East Lyme and its officials.

Londregan subsequently met with Nickerson and Mulholland, the Town's ZEO, and Nickerson reiterated the noise complaint, allegedly saying that "the people with the one-half million dollar boats that come down on weekends do not want" to hear the noise of the Shell-Plex tumbling operation. *Id.* ¶ 36. Sometime after this meeting, Nickerson and Londregan spoke on the phone, and Nickerson reiterated that the clients of the other marinas nearby did not want NBSF's shellfish farming operation so close to their clients' "yachts." *Id.* ¶ 39. Nickerson represented that "all the problems would go away" if Plaintiffs moved their shellfish farming operation to Cini Memorial Park, but Plaintiffs allege that Cini Memorial Park is in the same zoning district as the subject marina. *Id.* ¶¶ 37–38.

On October 7, 2019, the Town issued a cease-and-desist order against Plaintiffs on the basis of violations of the Town's zoning regulations. *Id.* ¶ 41; ECF No. 17-2.[3] The order explained that the operative Coastal Area Management ("CAM") Site Plan, approved by the Town's Zoning Commission in 2011 upon application by MSM's predecessor, did not allow Plaintiffs' commercial shellfish farming operation. ECF No. 17-2 at 1. Specifically, the CAM Site Plan approval was "limited to the operation of a marina," which the Zoning Commission had defined to be limited to a dock to secure moorings for pleasure and recreational boats and did not include the operation of a commercial shellfish farm. *Id.* Thus, the order explained, the operation of the shellfish farm at the subject property was not encompassed in the operative CAM Site Plan approval. *Id.* at 2. The order also reasoned that "the shellfish processing activities" occurring at the subject property were prohibited by Section 10.1.9 of the Town's zoning regulations. *Id.* The order therefore instructed Plaintiffs to cease and desist the operation of the "unpermitted

---

[3] Although the cease-and-desist order was provided by Defendants in support of their motion to dismiss and was not attached to the complaint, the Court will consider it for the purpose of the present motion because it is incorporated into the complaint by reference and is integral to the allegations of the complaint. *Lynch v. City of New York*, 952 F.3d 67, 79 (2d Cir. 2020).

commercial shellfishing business" at the subject property and to apply for a new CAM Site Plan approval by the Zoning Commission.  *Id.*

Although the complaint does not allege anything about the operative CAM Site Plan, Plaintiffs take issue with the other reasoning expressed in the cease-and-desist order.  Specifically, Plaintiffs allege that the zoning district in which the subject property is located, a "CM District," allows for "marinas" and that the Town has taken the position that the term "marina" is limited to pleasure and recreational boats *only* against Plaintiffs.  Compl. ¶ 42(a).  In addition, Plaintiffs allege that Section 10.1.9 of the Town's zoning regulations allows for vessels engaged in commercial shellfishery and excludes shellfish processing plants.  *Id.* ¶ 42(b).  Plaintiffs allege that the Shell-Plex is a vessel engaged in commercial shellfishery authorized under the regulations, and that there is no facility or plant at the subject property that would be precluded from operation. *Id.*  The Shell-Plex vessel is not a "processing plant," they contend, because it is not a facility at all and it does not process shellfish material to render it ready for consumption.  *Id.*

Plaintiffs appealed the cease-and-desist order to the Town's Zoning Board of Appeal ("ZBA").  *Id.* ¶ 43.  Although the complaint does not reveal the result of that appeal, the Court presumes that it was denied because Plaintiffs then appealed the ZBA's decision to the Connecticut Superior Court, which appeal remains pending.  *Id.*

C.  Other Alleged Interference by Defendants

Plaintiffs allege that Defendants further interfered with their operations following the issuance of the cease-and-desist order.  Around this time, NRAC, the community group opposed to Plaintiffs' shellfish farming operation, helped ensure that Don McKenzie, the owner of Boats, Inc., became a member of the Town's Shellfish Commission.  *Id.* ¶ 46.  After McKenzie became a member of the Shellfish Commission, the Commission "doubled" NBSF's rent for the

aquaculture areas it utilized in Niantic Bay.  *Id.* ¶ 47.  When NBSF's lease to those areas subsequently expired at the end of 2020, the Commission failed to renew it.  *Id.* ¶ 48.

In addition, in 2021, MSM began a project to dredge and rebuild a seawall at the subject property, which was performed with the required permits from DEEP.  *Id.* ¶¶ 49–50.  On May 10, 2021, the Town initiated an injunction action in Connecticut Superior Court against Londregan and MSM concerning this project.  *Id.* ¶ 51.  Specifically, the Town claimed that the project violated Section 14 of the Town's zoning regulation, which required obtaining prior CAM Site Plan approval.  *Id.* ¶ 52.  But Plaintifs allege that other residents and business owners have performed essentially similar work with the Town's knowledge without being required to submit a CAM Site Plan for such work.  *Id.* ¶¶ 52, 54.

### D.  Procedural History

In February of 2022, Plaintiffs initiated the present action against Defendants in federal court, bringing claims of selective enforcement and "class of one" discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.  *See id.* ¶¶ 1, 56–60. Defendants have moved to dismiss the complaint on two grounds: first, under Federal Rule of Civil Procedure 12(b)(1), they contend the Court lacks subject matter jurisdiction because Plaintiffs have not applied for a variance and thus their claims are not ripe; and second, under Federal Rule of Civil Procedure 12(b)(6), they argue that the allegations of the complaint fail to state a claim of selective enforcement or class-of-one discrimination.  Because the Court agrees with Defendants' first argument, it need not reach their second argument.

## II.   LEGAL STANDARD

A defendant may move to dismiss a case for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  A court lacks subject matter jurisdiction when it "lacks

the statutory or constitutional power to adjudicate the case." *Morrison*, 547 F.3d at 170 (citation and internal quotation marks omitted).  On a Rule 12(b)(1) motion, the court may "consider evidence outside the pleadings." *Id.* (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  When a defendant also seeks dismissal on Rule 12(b)(6) grounds, the court must consider the Rule 12(b)(1) ground first.  *Witt v. Vill. of Mamaroneck*, 992 F. Supp. 2d 350, 357 (S.D.N.Y. 2014); *see also Vandor, Inc. v. Militello*, 301 F.3d 37, 38–39 (2d Cir. 2002) (explaining that the court must "consider the ripeness question before reaching the merits of [the plaintiff's] claims because ripeness is jurisdictional . . . and absent jurisdiction federal courts do not have the power to dismiss *with prejudice*" (emphasis in original) (internal citations and quotation marks omitted)).

Ripeness, which is a "jurisdictional inquiry," is "a doctrine rooted in both Article III's case or controversy requirement and prudential limitations on the exercise of judicial authority." *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005).  Specifically, "[t]o be justiciable, a cause of action must be ripe—it must present 'a real, substantial controversy, not a mere hypothetical question.'" *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013) (quoting *AMSAT Cable Ltd. v. Cablevision of Conn.*, 6 F.3d 867, 872 (2d Cir. 1993)).  "The doctrine's major purpose 'is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977)).

Building on generally applicable principles of ripeness, the U.S. Supreme Court has developed specific ripeness requirements for claims arising from land use disputes.  *Murphy*, 402 F.3d at 347.  In *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson*

*City*, 473 U.S. 172, 186 (1985), the U.S. Supreme Court held that a regulatory taking claim is generally not ripe "until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue."[4] This rule effectively "conditions federal review on a property owner submitting at least one meaningful application for a variance." *Murphy*, 402 F.3d at 348 (citing *Williamson Cnty.*, 473 U.S. at 190); *see also Thomas v. Town of Mamakating, N.Y.*, 792 F. App'x 24, 27 (2d Cir. 2019) (summary order). Because the final decision rule is not to be "strictly confined," *Murphy*, 402 F.3d at 349, the Second Circuit has extended it beyond regulatory taking claims and applied it to substantive due process and equal protection claims. *Sunrise Detox V, LLC v. City of White Plains*, 769 F.3d 118, 122 (2d Cir. 2014); *Dougherty v. Town of N. Hempstead Bd. of Zoning App.*, 282 F.3d 83, 88–89 (2d Cir. 2002); *Vill. Green at Sayville*, 43 F.4th at 294.

The Second Circuit has explained that numerous policy considerations undergird the requirement that a property owner seek a variance before bringing a federal claim related to a land use dispute, including the development of a full record, the avoidance of unnecessary constitutional adjudication, and federalism principles recognizing that "land use disputes are uniquely matters of local concern more aptly suited for local resolution." *Murphy*, 402 F.3d at 348. That said, "the finality requirement is not mechanically applied." *Id.* at 349. Relevant here, a landowner need not seek a variance if doing so would be futile. *Murphy*, 402 F.3d at 349. Futility occurs "when

---

[4] The rule derived from *Williamson County* imposed two requirements for a federal claim arising from a land use dispute to be ripe: first, that the government entity reached a final decision regarding the application of the regulation to the property at issue, as noted above; and second, that the plaintiff sought "compensation through the procedures the State has provided for doing so" and was denied. *Williamson Cnty.*, 473 U.S. at 186, 194. *See also Murphy*, 402 F.3d at 348–49 (explaining *Williamson County*'s holding regarding "prong-one ripeness" and "prong-two ripeness"). Although the U.S. Supreme Court has not disturbed the first ripeness requirement, it since overruled *Williamson County* with respect to the second ripeness requirement. *Knick v. Twp. of Scott, Pa.*, 139 S. Ct. 2162, 2169, 2177 (2019); *see also Vill. Green at Sayville, LLC v. Town of Islip*, 43 F.4th 287, 294 (2d Cir. 2022) (explaining that the U.S. Supreme Court overruled the state court exhaustion requirement, but that the final decision requirement "remains good law"). Several of the Second Circuit cases cited herein preceding *Knick* have been abrogated in part by that holding.

a zoning agency lacks discretion to grant variances or has dug in its heels and made clear that all such applications will be denied." *Murphy*, 402 F.3d at 349.

## III.   DISCUSSION

The Court concludes that the final decision rule set forth in *Williamson County* applies to Plaintiffs' equal protection claims and that the complaint does not allege that seeking a variance would be futile.  Because Plaintiffs' opposition to the motion to dismiss has identified a reason why seeking a variance might be futile, however, the Court will grant Plaintiffs leave to amend the complaint to add factual allegations relating to futility.

To begin, Plaintiffs' equal protection claims are subject to *Williamson County*'s final decision rule.  As noted above, the Second Circuit has applied the final decision rule to equal protection claims, so Plaintiffs' argument that the final decision rule applies only to regulatory taking claims is unavailing.  *See Dougherty*, 282 F.3d at 88–89; *Vill. Green at Sayville*, 43 F.4th at 294; *Kowalczyk v. Barbarite*, 594 F. App'x 690, 693 (2d Cir. 2014) (summary order).  In addition, Plaintiffs appear to argue that the final decision rule should not apply to them because such rule generally does not apply to a claim relating to a landowner's prior nonconforming use.  To be sure, courts in this district have held that the final decision rule does not apply to a landowner's claim relating to their prior nonconforming use of the property, given that a nonconforming use is a vested property right predating the municipal zoning regulations that does not need a variance to operate despite seeming to violate those regulations.  *Beard v. Town of Monroe*, No. 3:13-cv-1714 (JBA), 2015 WL 8023632, at *5 (D. Conn. Dec. 4, 2015); *One Barberry Real Estate Holding, LLC v. Maturo*, No. 3:17-CV-985 (KAD), 2021 WL 4430599, at *15 (D. Conn. Sept. 27, 2021); *see also Taylor v. Zoning Bd. of App. of Town of Wallingford*, 65 Conn. App. 687, 693–94 (2001) (explaining Connecticut law regarding prior nonconforming uses).

But the complaint is entirely bereft of any claim that Plaintiffs' shellfish farming operation is a prior nonconforming use or any allegation suggesting that Plaintiffs have been operating their shellfish farm since before the Town enacted its zoning regulations (despite that their briefing in opposition to the motion to dismiss asserts these arguments). Accordingly, the allegations of the complaint do not support Plaintiffs' argument that they seek to vindicate a prior nonconforming use.[5] Because Plaintiffs' equal protection claims are subject to *Williamson County*'s final decision rule, and because Plaintiffs do not allege that they have sought a variance, their claims are not ripe.

Plaintiffs contend in opposition to Defendants' motion to dismiss that, even if their claims are subject to *Williamson County*'s final decision rule, seeking a variance from the Town's ZBA would be futile. But Plaintiffs do not attempt to identify a particular allegation of the complaint suggesting that the Town's ZBA has made clear that any application for a variance would be denied. *See Murphy*, 402 F.3d at 349. Indeed, the complaint contains no allegations pertaining to the ZBA at all—not even allegations articulating the ZBA's decision on Plaintiffs' appeal from the cease-and-desist order. Although Plaintiffs point to their allegations that Nickerson, Mulholland, and NRAC opposed Plaintiffs' shellfish farming operation, ECF No. 20 at 12, Plaintiffs fail to connect those allegations to the ZBA, the body that would issue a decision regarding a variance. *Kowalczyk*, 594 F. App'x at 693 (finding no evidence of futility and rejecting the plaintiff's reliance on "evidence of hostility by certain local officials regarding his zoning

---

[5] To the extent Plaintiffs argue that *Williamson County*'s final decision rule should not apply to them because they seek to vindicate some otherwise vested property right besides a prior nonconforming use, such argument is also unavailing. To begin, the complaint does not clearly identify any allegedly vested right Plaintiffs have to maintain their shellfish farm use, whether rooted in a prior nonconforming use or some other principle of land use law. And, importantly, Plaintiffs have not identified a case, and the Court has not found one, in which a vested property right *other* than a prior nonconforming use has been found exempt from the final decision rule. *See Thomas*, 792 F. App'x at 28 (recognizing that the plaintiff "does not have a vested right to complete a construction project regardless of whether her permits for that project expire or are violated").

compliance" because that hostility had nothing to do with the ZBA, "the body charged with deciding" an application for a variance).

Moreover, the allegations of general opposition to Plaintiffs' shellfish farming operation do not demonstrate that the variance procedures would be "so unreasonable, duplicative, or unjust as to make the [procedures] farcical," in satisfaction of the high standard of futility.  *See Sherman v. Town of Chester*, 752 F.3d 554, 563 (2d Cir. 2014) (finding the final decision rule futile where the town engaged in a "decade of obstruction" by employing "repetitive and unfair procedures" in order to avoid issuing a final decision); *see also Thomas*, 792 F. App'x at 28 (reasoning that a comment by a ZBA chairman reflecting "exasperation and skepticism" and a several-month delay in the process did not demonstrate futility).  In that way, this case is similar to one in which the Second Circuit rejected a landowner's claim of futility, reasoning that, without at least "one meaningful application for a variance," the court could not determine whether the ZBA had "dug in its heels" to demonstrate futility.  *Sunrise Detox V, LLC*, 769 F.3d at 118 (quoting *Murphy*, 402 F.3d at 348–49).  Similarly, here, the complaint is bereft of allegations suggesting that the ZBA has "dug in its heels" or that seeking a variance would be otherwise futile.  *See Murphy*, 402 F.3d at 349.  Accordingly, dismissal of Plaintiffs' equal protection claims, as currently pleaded, is proper.

Before closing the case, however, the Court will grant Plaintiffs leave to amend the complaint to add allegations demonstrating futility.  In opposition to Defendants' motion to dismiss, Plaintiffs point to Section 27.3.3 of the Town's zoning regulations, which provide that the ZBA may issue area variances, but not use variances.  ECF No. 20-1 at 6 (Town regulations as of

May 16, 2019).[6]   A use variance generally seeks a deviation from the zoning regulations' restriction on the property's use, whereas an area variance generally seeks a deviation from the zoning regulations' restriction on the construction and placement of structures on the property. *See* Variance, Black's L. Dictionary (11th Ed. 2019); 2 Am. L. Zoning § 13:9, *Use and area variances* (5th ed.).  Because the Town's zoning regulations forbid the ZBA from issuing a use variance, Plaintiffs contend, it would be futile for them to seek a variance for permission to deviate from the regulations Defendants seek to enforce against them.  By the plain language of the Town's zoning regulations, this appears to be a circumstance in which the ZBA "lacks discretion to grant variances" of the type Plaintiffs would likely require, which would demonstrate futility. *Murphy*, 402 F.3d at 349.

But the complaint, as currently pleaded, makes no mention of the ZBA's discretion to issue variances, or its lack thereof.  For example, Plaintiffs have not plausibly alleged that they would actually require a use variance, that the Town's regulations forbid the ZBA from issuing use variances, or that the ZBA in practice does not ever issue use variances.  In light of Plaintiffs' failure to allege any such facts, Defendants have not been afforded an opportunity to meaningfully argue that such facts would nevertheless fail to plausibly allege futility.[7]   Accordingly, the Court cannot conclude that the operative complaint plausibly alleges futility due to the ZBA's lack of discretion to issue use variances.  Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) is thus granted.  As Plaintiffs have raised the futility argument, however, and

---

[6] The Court takes judicial notice of the Town's regulations. *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes."); *Soundview Assocs. v. Town of Riverhead*, 725 F. Supp. 2d 320, 337 n.4 (E.D.N.Y. 2010) (considering a motion to dismiss and taking judicial notice of the provisions of a municipality's regulations pursuant to Federal Rule of Evidence 201).  *See also Morrison*, 547 F.3d at 170 (explaining that a district court may consider evidence outside the pleadings on a Rule 12(b)(1) motion).

[7] It is worth noting, however, that Defendants' reply brief in support of the present motion to dismiss does not address Plaintiffs' argument on this point.

have requested leave to amend, the Court will afford Plaintiffs an opportunity to amend the complaint to add such allegations.

Because Plaintiffs' claims as currently pleaded are not ripe, the Court lacks subject matter jurisdiction to determine whether the complaint plausibly alleges equal protection claims pursuant to Rule 12(b)(6), and thus does not reach that issue.[8]  *See Vandor, Inc.*, 301 F.3d at 38–39.

## IV.    CONCLUSION

For the reasons described above, Defendants' motion to dismiss, ECF No. 17, is GRANTED.  Plaintiffs shall file an amended complaint by **April 21, 2023**, and Defendants shall respond to the amended complaint by **May 12, 2023**.  If Plaintiffs fail to file an amended complaint by April 21, 2023, the case will be closed.

If Plaintiffs file an amended complaint by the deadline, the parties shall submit a new Rule 26(f) report by **May 5, 2023.**  Such report shall propose a schedule for expedited discovery, to conclude no later than **November 1, 2023**, given the length of time this case has been pending.

**SO ORDERED** at Hartford, Connecticut, this 31st day of March, 2023.

 */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE

---

[8] If Plaintiffs choose to file an amended complaint, they would be wise to consider whether their present allegations state a plausible claim for equal protection violations under governing law.  *See, e.g.*, *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019) (describing the distinct requirements of class-of-one and selective enforcement equal protection claims).  The Court is unlikely to allow further leave to amend, given that Plaintiffs are on notice of Defendants' arguments concerning deficiencies in the complaint's factual allegations.